UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREDERICK JAMES McKENNIE,

    Petitioner,

v.    Case No. 8:09-cv-1527-T-23EAJ

SECRETARY, Department of Corrections,

    Respondent.
                                       /

## **O R D E R**

McKennie petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for dealing in stolen property and for falsely verifying ownership to a pawnbroker. Numerous exhibits ("Respondent's Exhibit __ ") support the response. (Doc. 8) The respondent admits that McKennie's petition is timely and asserts no exhaustion defense. (Response at 5 Doc. 8) Respondent correctly argues that the grounds raised fail to satisfy the threshold requirements of section 2254(d) and (e).

## **FACTS**[1]

In 2005 McKennie entered an acquaintance's tool shed and stole a Craftsman buffer-polisher, a Craftsman lawn mower, an Echo leaf blower, and an Everstart battery

---

[1] This summary of the facts derives from McKennie's motion for post-conviction relief and McKennie's habeas petition. (Respondent's Exhibit 7 and Doc. 1, respectively)

charger. McKennie pawned each item. In McKennie's wallet his co-tenant found a pawnshop receipt listing the four items. Knowing the owner of the items, the co-tenant presented the receipt to the owner of the items, who also owned the shed. The owner called the police, who later arrested McKennie.

A jury convicted McKennie of dealing in stolen property and falsely verifying ownership to a pawnbroker. A habitual felon, McKennie was sentenced to thirty years in prison, which sentence was affirmed on direct appeal. McKennie asserted five grounds for relief in a timely Rule 3.850 motion, which was denied and affirmed on appeal. McKennie's habeas petition asserts four of those five grounds.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se,* of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se,* of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se,* of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings

of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 're-trials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed McKennie's conviction and sentence on direct appeal. (Respondent's Exhibit 3) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of McKennie's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 14 and 15) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert.*

- 4 -

*denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the state court record:

We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. McKennie bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of McKennie's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 13)

# **INEFFECTIVE ASSISTANCE OF COUNSEL**

McKennie claims ineffective assistance of counsel, a difficult claim to sustain, and respondent correctly asserts that all four grounds lack merit. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*,

466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

McKennie must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, McKennie must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. McKennie cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested

> in grading lawyers' performances; we are interested in whether the
> adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

McKennie must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In determining "reasonableness," a federal petition for the writ of habeas corpus permits an independent assessment of "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" but not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410

(A petitioner must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel (Respondent's Exhibit 9 at 2), McKennie cannot meet the "contrary to" test in Section 2254(d)(1). McKennie instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review require that the analysis of each claim begin with the state court's analysis.

Grounds One and Four:

McKennie asserts that, had counsel filed a motion to suppress the pawnshop receipt taken by McKennie's co-tenant, the trial court would have granted the motion to suppress. (Doc 1 at 10) In ground one McKennie alleges that counsel was ineffective for not filing a motion to suppress. (Doc. 1 at 9) In ground four McKennie alleges that counsel was ineffective for failing to investigate and depose the co-tenant to discover the

legal grounds for a motion to suppress. (Doc. 1 at 19) McKennie mistakenly argues that his co-tenant's actions violated the Fourth Amendment.

In denying the claim in ground one the post-conviction court found that "a wrongful search and seizure by a private party does not violate the Fourth Amendment" and that the action is illegal only if the party acted as "an instrument or agent of the state." (Respondent's Exhibit 8 at 2) The record shows that the owner of the stolen property did not know the items were stolen and did not call police until after McKennie's co-tenant showed the owner the pawnshop receipt. (Respondents Exhibit 16 at 117-123, 154-156) The post-conviction court found that, even if the co-tenant obtained the receipt through misconduct, she was not acting as an agent of the state and that a motion to suppress was meritless. (Respondents Exhibit 8 at 3) The post-conviction court denied the claim in ground one because McKennie's trial counsel was not deficient for not filing a meritless motion. (Respondents Exhibit 8 at 3)

The post-conviction court properly applied *Strickland* to the claim in ground one and found no deficient performance. A search or seizure by a private party "not acting as an agent of the Government" violates no Fourth Amendment right. *United States v. Jacobson*, 466 U.S. 109, 113 (1984), *quoting Walter v. United States*, 447 U.S. 649, 656 (1980). The post-conviction court correctly found both that McKennie's Fourth Amendment claim is meritless and that the failure to raise a meritless claim is not ineffective assistance. *Ojeda v. Sec'y for Dep't. of Corr.*, 279 Fed. App'x. 953, 955 (11th Cir. 2008).

The post-conviction court properly applied *Strickland* in denying McKennie's claim in ground four because the proposed motion to suppress lacked merit and McKennie could not show prejudice. (Respondent's Exhibit 8 at 4) The post-conviction court correctly found that, even assuming trial counsel's failure to investigate and depose the co-tenant was deficient performance, McKennie still could not show prejudice. (Respondent's Exhibit 8 at 4) Because the motion would have been denied and the evidence admitted, McKennie shows no "reasonable probability" that the verdict would have been different if trial counsel had investigated and deposed the co-tenant. *Strickland*, 466 U.S. at 693. Because the post-conviction court's denial follows Supreme Court precedent, both grounds one and four lack merit.

Ground Two:

McKennie alleges that trial counsel was ineffective for interfering with his right to testify. (Doc 1 at 5) McKennie alleges that he wanted to testify but that trial counsel discouraged him from testifying because the prosecution would discredit McKennie by disclosing his past convictions. (Doc 1 at 5 & 12) Without authoring a separate analysis, the post-conviction court adopted the State's position that McKennie decided not to testify. (Respondent's Exhibit 9 at 1) The State's position was that McKennie is held to his "record representations" and that sworn affirmations in open court carry consequences. (Respondent's Exhibit 9 at 5) The state asserted that McKennie's sworn statements prevail over his contradictory, collateral allegations. At trial McKennie

stated under oath that not testifying was his decision. (Respondent's Exhibit 16 vol. 2, citing Trial Transcript at 193-95):

> THE COURT: You've heard your attorney just announce to the Court that after conferring with you [that] you have made the decision not to testify?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is that correct?
>
> THE DEFENDANT: Yes.
>
> . . . .
>
> THE COURT: And you've considered all of - - both those options, and it is your decision that you have made that you do not want to testify in your case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you're making that freely and voluntarily, that decision?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Nobody's promised you or threatened you in any way to get you to make that decision, you are making it with full knowledge on your own?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. And you are thus far satisfied with the representation and the advice your attorney's given you on that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Then the Court finds that it is his decision that he has made independently not to take the stand and testify and he's making that freely and voluntarily.

Based on McKennie's sworn statements at trial, the post-conviction court's denial of this claim is consistent with federal law. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). The trial

judge's finding that McKennie's decision not to testify was free and voluntary constitutes a formidable barrier in subsequent collateral proceedings. *Blackledge*, 431 U.S. at 73-74.

The presumption of verity prevails against McKennie's collateral allegation in ground two. Further, trial counsel's advice was legally sound, typical of good practice, and consistent with applicable legal precedent. Preventing the revelation of prejudicial prior convictions is a sensible reason for not having a defendant testify. *United States v. Teague*, 953 F.2d 1525 1533 n. 9 (11th Cir. 1992). "If counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify." *Teague*, 953 F.2d at 1533. Because the claim fails to overcome the presumption that his decision not to testify was both voluntary and based on sound legal advice, McKennie's ground two lacks merit.

Ground Three:

McKennie alleges that trial counsel was ineffective for failing to advise him that his testifying would secure a judgment of acquittal. McKennie's allegation in ground three shows a misunderstanding of the requirements for a judgment of acquittal. McKennie contends that his testimony would sufficiently contradict the testimony of the state's witnesses to secure a judgment of acquittal. (Doc. 1 at 16-17)

McKennie misunderstands Florida's law governing a judgment of acquittal. Florida precedent establishes that the standard is whether the state has presented legally sufficient evidence that is inconsistent with the defense's theory. *A.M.W. v. State*, 934 So. 2d 564, 568 (Fla. 5th DCA 2006). The trial court must review the state's evidence in

a light most favorable to the state in determining whether the jury could infer guilt to the exclusion of all other inferences. *State v. Law*, 559 So. 2d 187, 189 (1989). The state is not required to conclusively rebut every possible variation of events inferred from the evidence. *Law*, 599 So. 2d at 189. The state only needs to offer competent evidence inconsistent with the defense's theory. 599 So. 2d at 189. A review of the trial transcript shows that the state's evidence would overcome a motion for judgment of acquittal even if McKennie testified.

McKennie alleges that he would have testified that he was the actual owner of the items pawned. (Doc. 1 at 14) The state introduced competent evidence that was inconsistent with McKennie's proposed testimony. First, the state provided the victim's testimony that the pawned items were his property, the items were stored in his shed, and that the screen door of the shed "had been pried in." (Respondent's Exhibit 16, Trial Transcript 114-120) Second, the state offered a police officer's testimony confirming that the victim was able to accurately describe the pawned property before examining the items. (Respondent's Exhibit 16, Trial Transcript at 153-62) McKennie's conclusory post-conviction allegations would not have sufficiently rebutted the state's evidence. *See Law*, 599 So. 2d at 189.

The post-conviction court properly determined that the trial court would not have granted a judgment of acquittal if McKennie had testified. Therefore, defense counsel's advice was not deficient performance that prejudiced McKennie. The post-conviction

court's denial on state law grounds was consistent with *Strickland*. McKennie's claim in ground three lacks merit.

Accordingly, McKennie's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against McKennie and close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

McKennie is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, McKennie must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because McKennie fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, McKennie cannot meet *Slack*'s prejudice requirement. 529 U.S. at 484. Finally, McKennie is not entitled to appeal *in forma pauperis* because he is not entitled to a certificate of appealability.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. McKennie must pay the full $455 appellate filing fee

without installments unless the Circuit Court allows McKennie to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on June 26, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE